## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**MARY BRAZIL**                                           **PLAINTIFF**

**v.**                          **No. 4:13-cv-468-DPM**

**ARKANSAS DEPARTMENT OF**
**HUMAN SERVICES**                              **DEFENDANT**

### ORDER

Mary Brazil has brought Title VII race discrimination and retaliation claims against the Arkansas Department of Human Services. Brazil is African-American. She and a former coworker, Drenda Harkins, had a sometimes contentious relationship. The record is silent about Harkins's race. Harkins later became Brazil's supervisor and, according to Brazil, treated her unfairly. Brazil has provided a thorough background of her relationship with Harkins. Boiled down, Brazil has presented two claims: She was denied a lateral transfer because of her race; and she was retaliated against for complaining about Harkins in the transfer request.

**1. Facts.** Here are the undisputed material facts, and where there is some genuine dispute, the facts offered by Brazil. *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003).

Brazil has worked at DHS for nearly three decades. In 2007, she

transferred to the Division of Medical Services. There Brazil worked as an administrative assistant to Debbie Hopkins. Brazil and Drenda Harkins, at the time, were coworkers. In spring 2010, Harkins asked Brazil to perform a task. Brazil didn't do it quickly enough for Harkins. Displeased, Harkins pulled Brazil aside and scolded her for having a bad attitude. Hopkins retired a few months later, and Harkins succeeded her as Brazil's supervisor.

Shortly after becoming a supervisor, Harkins reassigned many of Brazil's duties to Debbie Cripps, a Caucasian coworker. Brazil still performed many of her pre-Harkins duties, but she no longer had enough work to stay busy. Brazil tired of her light load and asked to transfer under Roger Patton's direct supervision. Harkins approved the transfer.

Brazil enjoyed working for Patton. But in late 2012, Patton transferred to the newly created Customer Care and Coordination of Coverage Unit. With Patton gone, Tracy Mitchell became Brazil's immediate supervisor. Even after the supervisor swap, with everyone's agreement, Brazil continued doing work for Patton. In January 2013, Mitchell emailed the CCCCU supervisors that Brazil would soon be working on a big project and would no longer be able to help the CCCCU. Harkins reviewed a draft of Mitchell's email and

rewrote it. № 58-2 *at 9 & 69 at 4*. Brazil believes that Harkins orchestrated the Mitchell email to prevent Brazil from having meaningful work and opportunities to advance her career.

A few days after the Mitchell email, Brazil requested a transfer to the CCCCU. Her request was denied; Suzanne Bierman, the unit's head, said she had no job openings for an administrative assistant. № *53-5*. About a month later, Brazil complained to the DHS's directors about the unpleasant working conditions under Harkins. № *53-9*. At the end of her complaint, Brazil asked to be transferred out of Harkins's unit. Brazil did not confine her transfer request to the CCCCU. Surely, Brazil says, one of DHS's twenty-seven units had a job for her. For example, Alisa Carter, another Caucasian coworker, was transferred to a different division around the time Brazil asked for a transfer. Carter, though, had a different job; and Brazil is unsure whether Carter transferred or simply moved desks.

In retaliation for Brazil's complaint, Harkins (according to Brazil) used the performance-evaluation process to harass her. Irregularities in the process, Brazil says, reveal Harkins's ill intent. First, a man named Victor Sterling accompanied Mitchell to the meeting where Brazil reviewed her evaluation.

Mitchell alone should have conducted the meeting. Second, the evaluation wasn't signed by Brazil's supervisors, as required by DHS policy. Third, Brazil was rated "unsatisfactory" in three of the four areas of evaluation. Brazil successfully appealed those low scores. № 53-12. And Mitchell was ordered to re-attend supervisor training. № 53-11.

Shortly after Brazil filed this lawsuit, someone put parking cards half-soaked in red ink on Brazil's desk. Brazil was disturbed and intimidated when she saw the cards. Brazil doesn't know who planted the cards. She suspects that Harkins masterminded the scheme in retaliation for her complaint.

**2. Title VII Claim.** Brazil has not made out a *prima facie* case of discrimination. Because she hasn't presented direct evidence of discrimination, Brazil must show that she (1) belonged to a protected class, (2) satisfied DHS's expectations, (3) suffered an adverse employment action, and (4) did so in circumstances permitting an inference of discrimination. *Davis v. Jefferson Hospital Association*, 685 F.3d 675, 681 (8th Cir. 2012). The parties agree that Brazil satisfies the first two elements.

Brazil's claim fails on the third element because a transfer denial is not an adverse employment action. *LePique v. Hove*, 217 F.3d 1012, 1013–14

-4-

(8th Cir. 2000). Even if it were, Brazil hasn't offered evidence that she was denied a transfer because she is African-American. The series of emails between Harkins and Mitchell don't show, as Brazil alleges, that Harkins masterminded a scheme to pull Brazil from the CCCCU. Those emails show that Harkins toned down an email that Mitchell wanted to send colleagues. On this record, a reasonable juror could not infer that Harkins, based on race, solicited the Mitchell email to discriminate against Brazil. Instead, Brazil was denied the transfer because the CCCCU had no job for her.

Brazil argues that the no-opening excuse is pretext for discrimination. As evidence, Brazil points out that the CCCCU hired Chevera Blakemore, an administrative assistant. The Court assumes, because it's favorable to Brazil, that Blakemore was an administrative assistant. № 69-4 at 1–2. It's uncontested, however, that Harkins never supervised Blakemore. That difference makes Blakemore an improper comparator. *Wierman v. Casey's General Stores*, 638 F.3d 984, 994 (8th Cir. 2011). More important than any difference, Brazil and Blakemore are both African-American. Brazil's pretext evidence is thus plainly inconsistent with a reasonable inference of race-based discrimination. *Compare Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1086–87

-5-

(8th Cir. 2013).

Brazil has also not shown that others in her position were allowed to transfer. Brazil says that Alisa Carter, a Caucasian coworker, was transferred to another unit. But Carter performed different job duties and had a different pay grade than Brazil. Moreover, Brazil is uncertain whether Carter was transferred or simply moved to another desk. № 58-1 at 73–77 & 79–80.

It's unfortunate that Brazil is being underutilized in her job. This record, however, doesn't support a reasonable inference that Brazil's race has caused her work problems.

**3. Retaliation.** Brazil's claim that Harkins retaliated against her for requesting a transfer fails too. To prove retaliation, Brazil must show that she (1) engaged in protected conduct, (2) suffered an adverse employment action, and (3) the two things were causally related. *Davis*, 685 F.3d at 684.

Brazil has not shown that she's suffered an adverse employment action. The Court accepts as true that Mitchell unfairly rated Brazil's job performance as "unsatisfactory." But Brazil successfully appealed this unfair evaluation, which was never made part of her personnel jacket. № 53-11. And those scores didn't affect her pay, position, or other conditions of employment.

-6-

Without more, an unfair performance evaluation is not an adverse employment action. *Compare Phillips v. Collings*, 256 F.3d 843, 848–49 (8th Cir. 2001) *with Cossette v. Minnesota Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999).

Brazil also got a smaller discretionary bonus in 2014 than in 2013. She attributes the smaller bonus to her unfair performance evaluation. DHS counters that the State of Arkansas gave smaller bonuses to all employees in 2014 than it had in 2013. Brazil has offered no evidence showing that retaliation, rather than a generally applicable state policy, drove her 2014 bonus.

Last, Brazil says that, after she filed this lawsuit, someone put the red-ink-soaked parking cards on her desk. That's a disturbing event. And this kind of conduct is unacceptable on the job. Brazil believes Harkins was behind it. Brazil has no evidence beyond her opinion, though, of what or who prompted the cards. Brazil's belief is insufficient to support a retaliation verdict. *Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d 535, 540–41 (8th Cir. 2014).

\* \* \*

Motion, № 53, granted. Judgment will issue in due course.

So Ordered.

D.P. Marshall Jr.
United States District Judge

23 April 2015